UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
COLONY INSURANCE COMPANY,                              Civil Action No.: 1:14-cv-3994

                Plaintiff,

- against –

NEW EMPIRE BUILDER CORP.,                              COMPLAINT

                Defendant.
-------------------------------------------------------X

Plaintiff COLONY INSURANCE COMPANY ("Colony") as and for its Complaint against NEW EMPIRE BUILDER CORP ("New Empire"), respectfully alleges as follows:

## NATURE OF THIS LAWSUIT

1. This action arises out of a dispute between the parties concerning insurance coverage for an underlying action captioned *Kevin Song and Eunkyung Jang v. USA Development & Management LLC, China Perfect Construction Corp., China Perfect Iron & Stainless Steel Corp., and New Empire Builder Corp.*, venued in the Supreme Court of the State of New York, County of Queens, bearing Index Number 17601/2011 (the "underlying action").

2. During the course of investigating whether coverage for the underlying action is provided by a commercial general liability insurance policy issued by Colony to New Empire (the "Policy"), Colony became aware that New Empire (a) failed to obtain from the pertinent subcontractor China Perfect Iron and Stainless Steel Corp. ("China Perfect Iron", an entity which appears to be interrelated with New Empire) its required agreement to indemnify and provide additional insured coverage for the construction project at issue, and (b) materially misrepresented its interrelationship with two co-defendants in the underlying action, namely China Perfect Construction Corp. ("China Perfect Construction") and China Perfect Iron.

3.      Colony seeks to rescind the Policy on the basis that New Empire made material misrepresentations and omissions to Colony prior to the Policy's issuance in conjunction with its insurance application.

## PARTIES

4.      Plaintiff Colony is an insurance company organized and existing pursuant to the laws of the State of Virginia, with its principal place of business in Richmond, Virginia.

5.      Defendant New Empire Builder Corp. is a corporation organized and existing under the laws of the State of New York, with a principal place of business at 1544 72nd St., Brooklyn, New York. Upon information and belief, New Empire Builder Corp. may also have principal places of business at 4920 3rd Avenue, Brooklyn, New York and/or 525 63rd Street, Brooklyn, New York.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as diversity of citizenship exists between Colony (a Virginia insurance company with a Virginia principal place of business) and New Empire (a New York corporation with a New York principal place of business), and the matter in controversy (*i.e.*, the value of the underlying action and the amount of the Policy) exceeds the sum of $75,000, exclusive of interest and costs.

7.      This Court has personal jurisdiction over the defendant because defendant New Empire is domiciled in the State of New York, County of Kings.

8.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) because, at all times relevant hereto, including as of the date of commencement this action, defendant New Empire is domiciled in this judicial district, maintains its principal place of

business in this judicial district, transacts business in this judicial district, and is subject to personal jurisdiction in this judicial district.

9. An actual case and controversy of a justiciable nature, pursuant to Article III of the United States Constitution and 28 U.S.C. §§ 2201 and 2202, exists between Colony on the one hand, and New Empire on the other hand.

10. This case and controversy is ripe for adjudication, and involves the rights, liabilities and legal relations of the parties under a contract of insurance.

11. A judgment entered in this action will serve a useful purpose in clarifying and settling the legal relations of the parties relating to the insurance coverage available in the underlying action under the insurance contract at issue, and will terminate and afford relief from the current uncertainty, insecurity and controversy giving rise to this proceeding.

12. This controversy may be resolved by a judgment in this action without the necessity of other suits, or the joinder of any other parties.

## THE UNDERLYING ACTION

13. In the underlying action, the underlying plaintiff, Kevin Song, alleges that on June 2, 2011, he was involved in an accident during the course of his employment at a construction site located at 342 53rd Street, Brooklyn, New York (the "worksite"), when a hoisted beam became loose, fell on and crushed his hand, resulting in an amputated left thumb and related personal injuries to his right arm, left foot, cervical and lumbar spine (the "accident").

14. In the underlying action, the underlying plaintiff, Eunkyung Jang, alleges that as a result of the underlying accident, she suffered a loss of the usual and customary services that a spouse would lose in such circumstances.

15. In the underlying action, plaintiffs allege that defendant USA Development was the owner of the worksite, that China Perfect Construction was the initial general contractor, that New Empire was the subsequent general contractor, and that China Perfect Iron was a subcontractor on the construction site.

## THE COLONY INSURANCE POLICY

16. Colony issued a commercial general liability policy to New Empire under policy number AR 3360716, with a policy period from May 5, 2011 to May 5, 2012 (the "Policy"), a true copy of which is annexed hereto as Exhibit "A."

17. The Policy provides commercial general liability coverage with limits of One Million Dollars ($1,000,000.00) per occurrence and Two Million Dollars ($2,000,000.00) in the general aggregate. *See* Exhibit "A", Form CDCJ6553.

18. The Policy carried an insurance premium of $75,250.00. *See* Exhibit "A", page 1.

## NEW EMPIRE'S INSURANCE APPLICATION

19. New Empire initially sought coverage from Colony in September 2010 for coverage beginning midterm.

20. After New Empire was advised that a midterm contract would be more expensive, it did not obtain that coverage.

21. In April 2011, New Empire again sought coverage from Colony (the "insurance application").

22. The loss runs obtained in conjunction with the insurance application indicate that New Empire's most recent policy period was January 26, 2011 to January 26, 2012, and thus New Empire sought to obtain coverage midterm again.

4

23. An initial unsigned version of New Empire's April 2011 insurance application indicates that New Empire's primary operations were as a general construction contractor, but that it also performed 40 percent work as a subcontractor.

24. A second version of New Empire's April 2011 insurance application dated April 9, 2011 indicates an exposure of $1,300,000.00 for general construction contractor work (in sales values), and an exposure of $300,000.00 for subcontractor work.

25. A third version of New Empire's April 2011 insurance application, also dated April 9, 2011, crossed out the exposures from the second version of the application (as alleged in the immediately preceding paragraph herein), and indicates an exposure of $2,300,000.00 for general construction contractor work, and an exposure of $1,500,000.00 for subcontractor work.

26. On or about May 5, 2011, the third version of New Empire's insurance application (as described in the immediately preceding paragraph) was signed by Rong de Zhao.

27. Each of the aforementioned versions of New Empire's insurance application is consistent in that they all identify New Empire's address as 1544 72nd Street, Brooklyn, New York 11228.

28. Each of the aforementioned versions of New Empire's insurance application is consistent in that they all deny that New Empire has any other business ventures for which coverage is not requested.

29. Each of the aforementioned versions of New Empire's insurance application is consistent in that they all deny that New Empire's subcontractors carry coverages or limits less than New Empire does.

30. Each of the aforementioned versions of New Empire's insurance application is consistent in that they all deny that New Empire's subcontractors are allowed to work without providing a certificate of insurance to New Empire.

31. Each of the aforementioned versions of New Empire's insurance application is consistent in that they all deny that New Empire's subcontractors are allowed to work without providing additional insured status to New Empire.

32. Each of the aforementioned versions of New Empire's insurance application is consistent in that they all deny that New Empire has been active in or was then active in joint ventures.

33. Each of the aforementioned versions of New Empire's insurance application is consistent in that they all deny that New Empire leases employees to or from other employers.

34. Each of the aforementioned versions of New Empire's insurance application is consistent in that they all deny that there is a labor interchange between New Empire and any other business or subsidiaries.

35. A Contractors Supplement to the insurance application, signed by Rong de Zhao and dated May 9, 2011, states that New Empire performs 60 percent contractor work and 40 percent subcontractor work.

36. The same Contractors Supplement represents that subcontractors are required to provide proof of general liability and worker's compensation insurance.

37. The same Contractors Supplement represents that New Empire required subcontractors to carry $1,000,000.00 to $3,000,000.00 in insurance coverage limits.

38. The same Contractors Supplement represents that New Empire retains copies of the certificates of insurance.

6

39. The same Contractors Supplement represents that New Empire uses a subcontract agreement with all independent contractors.

40. The same Contractors Supplement represents that New Empire requires subcontractors to name New Empire as an additional insured on their policy.

41. An Acord Umbrella Section application, signed by Rong de Zhao and dated May 9, 2011, identifies New Empire's address as 525 3rd 63rd Street, Brooklyn, New York.

## THE OTHER RELEVANT DOCUMENTS AND FACTS

42. New Empire alleges that it entered into a subcontract with China Perfect Iron for work to be performed at the worksite which is the subject matter of the underlying action.

43. The New Empire subcontract with China Perfect Iron relevant to the underlying action, dated May 23, 2011, did not require China Perfect Iron to provide a certificate of insurance and/or to name New Empire as an additional insured.

44. The New Empire subcontract with China Perfect Iron relevant to the underlying action, dated May 23, 2011, indicates that China Perfect Iron's address is 525 63rd Street, Brooklyn, New York.

45. The underlying plaintiff testified during his deposition in the underlying action that he had been working for China Perfect Iron at the worksite in question for two months prior to his June 2, 2011 accident (and thus, more than one month before the policy issuance). If true, this would mean that, despite its representation to the contrary, New Empire did not have signed agreements with its subcontractors.

46. The New York State Department of State, Division of Corporations, indicates that China Perfect Construction Corp. has a principal address located at 525 3rd Avenue, Brooklyn, New York.

47. The New York State Department of State, Division of Corporations, indicates that China Perfect Iron & Stainless Steel Corp. maintained a principal address located at 525 63rd Street, Brooklyn, New York.

48. The initial Certificate of Incorporation of New Empire contains a registered address for service of process at 525 63rd Street, Brooklyn, New York.

49. A business card utilized by China Perfect indicates that China Perfect is "doing business as" New Empire.

50. New Empire's general contractor work permit applications for the worksite where the underlying accident occurred indicate New Empire's telephone number as 718-833-8568.

51. China Perfect's general contractor work permit applications for the worksite where the underlying accident occurred indicate China Perfect's telephone number as 718-833-8568.

52. May Lu, an employee for New Empire, accepted service of process in the underlying action on behalf of China Perfect Iron at the 525 63rd Street, Brooklyn, New York address.

53. Workers compensation claim materials relevant to the underlying action contain the same telephone number and the same 525 63rd Street, Brooklyn, New York address for New Empire, China Perfect and China Perfect Iron.

54. The underlying plaintiff's workers compensation claim documents identifies the underlying plaintiff's employer as "China Perfect Construction (…a/k/a China Perfect Iron and Stainless Steel Corp.)

55. The underlying plaintiff's workers compensation claim documents identify the underlying plaintiff's employer's address as both 4920 3rd Avenue, Brooklyn, New York and 525 63rd Street, Brooklyn, New York.

56. The New Empire proposal to USA Development for the work to be performed at the worksite where the underlying accident occurred contains a letterhead identifying New Empire's address as 4920 3rd Avenue, Brooklyn, New York.

57. On or about January 26, 2011, USA Development advised the New York City Department of Buildings that China Perfect had been terminated as the general contractor for the worksite where the underlying accident occurred.

58. On or about January 26, 2011, USA Development advised the New York City Department of Buildings that USA Development intended to hire New Empire as the new general contractor to complete the project at issue in the underlying action.

59. A February 17, 2011 permit application signed by May Lu indicates that China Perfect would be performing work as the construction superintendent at the worksite where the underlying accident occurred.

60. The February 17, 2011 permit application signed by May Lu indicates that China Perfect and New Empire each have the same telephone number, namely 718-833-8568.

61. Upon information and belief, China Perfect was the general contractor for a construction project in Brooklyn in March 2010 in which a structure collapsed, injuring three workers and a fourth individual.

62. New Empire's application for insurance with Colony did not disclose the March 2010 accident involving the collapsed structure in which China Perfect was general contractor.

63. Dave Ramsumair, the underlying plaintiff's co-worker at the worksite relevant to the underlying action, testified at a deposition in the underlying action that prior to being hired in or around April 2011, he interviewed with Benny Zao, whom he identified as the owner of New Empire, and with Kannon Tam, whom he identified as the foreman for New Empire.

64. Dave Ramsumair testified at his deposition in the underlying action that during his interview, he was being considered for employment by China Perfect.

65. Dave Ramsumair testified at his deposition in the underlying action that during his interview, he was advised that China Perfect would be changing names to New Empire Builders Corp.

66. Dave Ramsumair testified at his deposition in the underlying action that he believed that New Empire and China Perfect were related entities.

## COUNT ONE

67. Colony repeats, reiterates, and realleges each and every allegation contained in the foregoing paragraphs as if repeated and set forth again herein.

68. In its insurance application, New Empire denied that its subcontractors carry coverages or limits less than New Empire does.

69. In its insurance application, New Empire denied that its subcontractors are allowed to work without providing certificates of insurance to New Empire.

70. In its insurance application, New Empire denied that its subcontractors are allowed to work without providing additional insured status to New Empire.

71. The New Empire subcontract with China Perfect Iron relevant to the underlying action, dated May 23, 2011, contradicts these material representations in that said subcontract did not require China Perfect Iron to provide a certificate of insurance and/or to name New Empire

as an additional insured. Upon information and belief, this was not the first time New Empire and China Perfect had worked together.

72. The representations made by New Empire in its insurance application were material to the risk and substantially increased or expanded the nature and scope of the actual risk and the exposure under the Policy.

73. Colony relied on the material representations made and information submitted on behalf of New Empire in its assessment of the nature and scope of the risk in issuing the Policy and in fixing premium rates.

74. Colony reasonably relied on the representations made and information submitted on behalf of New Empire in its decision to issue the Policy, and the truth or falsity of the information provided to Colony materially affected its decision to accept the risk and issue the Policy.

75. As such, the information misrepresented to or concealed from Colony, as set forth above, was and is *per se* material to the risk.

76. To the extent that it is determined that New Empire failed to disclose known information, or actively disclosed incomplete, misleading and/or patently false information, material to the risk, then Colony is entitled to the remedy of rescission of the Policy.

77. In the alternative, to the extent that New Empire knew, or reasonably should have known, that Colony did not know, understand, or have a reasonable basis to know the material facts that were misrepresented to or not disclosed to Colony, then the Policy was procured as a result of a mutual or unilateral mistake, entitling Colony to rescission. Colony hereby offers and tenders the full amount of the premium ($75,250) to New Empire.

**WHEREFORE,** plaintiff Colony Insurance Company hereby requests that this Court issue a judgment declaring that:

(a) the Colony Policy is rescinded and void *ab initio* because New Empire has misrepresented or concealed material, known facts, or in the alternative, because the Colony Policy was issued as a result of a mutual or unilateral mistake; and

(b) Colony is entitled to recover any investigative expenses, attorneys' fees, costs and such other relief as this Court deems just and proper.

## COUNT TWO

78. Colony repeats, reiterates, and realleges each and every allegation contained in the foregoing paragraphs as if repeated and set forth again herein.

79. In its insurance application, New Empire denied that it had any other business ventures for which coverage is not requested, and failed to disclose that it was assuming China Perfect operations.

80. Multiple documentary evidence indicates that New Empire, China Perfect and China Iron maintained the same address(es) at the time of New Empire's application for insurance with Colony.

81. Multiple documentary evidence indicates that New Empire, China Perfect and China Iron maintained the same telephone number at the time of New Empire's application for insurance with Colony.

82. A February 17, 2011 permit application signed by May Lu indicates that China Perfect would be performing work as the construction superintendent at the worksite where the underlying accident occurred three weeks after USA Development, the owner of the project in

12

question, notified the New York City Department of Buildings that it had terminated China Perfect.

83. May Lu, an employee for New Empire, accepted service of process in the underlying action on behalf of China Perfect Iron at the 525 63rd Street, Brooklyn, New York address.

84. The underlying plaintiff's workers compensation claim documents identifies the underlying plaintiff's employer as "China Perfect Construction (…a/k/a China Perfect Iron and Stainless Steel Corp.).

85. As pleaded above, Dave Ramsumair testified at his deposition in the underlying action that during his employment interview, he was advised that China Perfect would be changing names to New Empire Builders Corp.

86. As pleaded above, Dave Ramsumair testified at his deposition in the underlying action that he believed that New Empire and China Perfect were related entities.

87. Upon information and belief, China Perfect was the general contractor for a construction project in Brooklyn in March 2010 in which a structure collapsed, injuring three workers and a fourth individual.

88. New Empire's application for insurance with Colony did not disclose the March 2010 accident involving the collapsed structure in which China Perfect was general contractor.

89. In its insurance application, New Empire denied that it leased employees to or from other employers.

90. In its insurance application, New Empire denied that there was a labor interchange between New Empire and any other business or subsidiaries.

91. May Lu, an employee for New Empire, accepted service of process in the underlying action on behalf of China Perfect Iron at the 525 63rd Street, Brooklyn, New York address.

92. The underlying plaintiff testified during his deposition in the underlying action that he began working for China Perfect Iron at the worksite in question nearly two months prior to the execution of New Empire's subcontract with China Perfect Iron.

93. Dave Ramsumair testified at his deposition that although he was initially told that he was interviewing for a job with China Perfect, he actually began working as an excavator equipment operator for New Empire.

94. The representations made by New Empire in its insurance application for the Colony Policy concerning its historical operations that it did not have any related business entities are contradicted by the documentary evidence that establishes that New Empire, China Perfect and China Perfect Iron were interrelated entities at the time of the insurance application.

95. The representations made by New Empire in its insurance application for the Colony Policy that it did not lease or interchange employees with any other business entities or subsidiaries are contradicted by the documentary evidence that establishes that New Empire, China Perfect and China Perfect Iron leased or interchanged employees with each other.

96. These representations made by New Empire in its insurance application were material to the risk and substantially increased or expanded the nature and scope of the actual risk and the exposure under the Policy.

97. New Empire failed to disclose that it operated, for practical purposes, as part of a larger operation that included the China Perfect entities.

98. To the extent that New Empire's insurance application for the Colony Policy included in any manner the business history of China Perfect, by way of example, in representing its years in business and/or its historical revenue, the application represents a material concealment and/or misrepresentation, in that the China Perfect loss history (particularly with regard to the March 2010 accident) was concealed from and misrepresented to Colony.

99. Alternatively, to the extent that New Empire's insurance application for the Colony Policy did not include in any manner the business history of China Perfect, by way of example, in representing its years in business and/or its historical revenue and its loss history (particularly with regard to the March 2010 accident), and to the extent that there had been a merger of China Perfect into New Empire, as suggested by Dave Ramsumair's deposition testimony, then the application likewise represents a material concealment and/or misrepresentation, in that the China Perfect loss history (particularly with regard to the March 2010 accident) was concealed from and misrepresented to Colony.

100. Colony relied on these material representations, concealments, and information submitted on behalf of New Empire in its assessment of the nature and scope of the risk in issuing the Policy and in fixing premium rates.

101. Colony reasonably relied on these representations, concealments, and information submitted on behalf of New Empire in its decision to issue the Policy, and the truth or falsity of the information provided to Colony materially affected its decision to accept the risk and issue the Policy.

102. As such, the information misrepresented to or concealed from Colony, as set forth above, was and is *per se* material to the risk.

103. To the extent that it is determined that New Empire failed to disclose known information, or actively disclosed incomplete, misleading and/or patently false information, material to the risk, then Colony is entitled to the remedy of rescission of the Policy.

104. In the alternative, to the extent that New Empire knew, or reasonably should have known, that Colony did not know, understand, or have a reasonable basis to know the material facts that were misrepresented to or not disclosed to Colony, then the Policy was procured as a result of a mutual or unilateral mistake, entitling Colony to rescission.

105. Colony hereby tenders the entire premium ($75,250) amount to New Empire.

**WHEREFORE,** plaintiff Colony Insurance Company hereby requests that this Court issue a judgment declaring that:

(a) the Colony Policy is rescinded and void *ab initio* because New Empire has misrepresented or concealed material, known facts, or in the alternative, because the Colony Policy was issued as a result of a mutual or unilateral mistake; and

(b) Colony is entitled to recover any investigative expenses, attorneys' fees, costs and such other relief as this Court deems just and proper.

## COUNT THREE

106. Colony repeats, reiterates, and realleges each and every allegation contained in the foregoing paragraphs as if repeated and set forth again herein.

107. Coverage is barred by the policy's Employer's Liability Exclusion.

108. Coverage is barred to the extent that New Empire has failed to comply with the duties in the event of an occurrence, including any failure to accurately convey information concerning the background of the injury and/or claim.

109. The insured has failed to comply with the policy's deductible provision.

110. Colony pleads, in the alternative, if rescission is not granted, and coverage is otherwise found to exist, the applicable deductible is $25,000.

111. Colony notes, however, that there is a significant difference between the insured's failure to prospectively obtain subcontractor coverage (which would lead to the application of the deductible) and a misrepresentation about existing relationships with subcontractors (which appropriately leads to rescission).

**WHEREFORE**, plaintiff Colony Insurance Company hereby requests declaratory judgment in its favor on the issue of coverage.

### JURY DEMAND

Colony hereby demands a trial by jury on all issues so triable.

Dated: June 26, 2014

**STEWART BERNSTIEL REBAR & SMITH**

**OF COUNSEL:**

By: /s/ Vincent Chirico

William F. Stewart, Esq.  
Stewart Bernstiel Rebar & Smith  
470 Norristown Rd., Ste. 201  
Blue Bell, PA 19422  
Wstewart@sbrslaw.com

Vincent Chirico, Esq.  
(vchirico@sbrslaw.com)  
110 Wall St., 11th Fl.  
New York, New York 10005  
P: (212) 709-8110  
F: (212) 943-2300  
*Attorneys for Plaintiff,*  
*Colony Insurance Company*